ECF DOCUMENT
I hereby attest and certify this is a printed copy of a document which was electronically filed with the United States District Court for the Northern District of California
Date Filed: 1/12/07
RICHARD W. WIEKING, Clerk
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES J. KLEIN,<br><br>Plaintiff,<br><br>v.<br><br>HOWARD GARDNER, et al.,<br><br>Defendants. | No. C 06-06918 CRB<br><br>**ORDER**<br><br>ENTERED IN CIVIL DOCKET 1/12/07 |

This case involves a dispute among family members about what should be done with the family's (possibly defunct) real estate business. This controversy is also the subject of a previously filed and related lawsuit currently pending in the District of Oregon. Now before the Court is Defendants' motion to dismiss, or in the alternative, to transfer venue, or in the alternative, to stay proceedings. For the reasons set forth below, the motion is GRANTED and the case is hereby TRANSFERRED to the District of Oregon.

### BACKGROUND

In 1980, Alan S. Klein and several of his family members started a company called Olympic Partners. Klein, a California resident, was the company's general partner. Its limited partners included Howard Gardner and Marjorie K. Gardner, who live in Illinois, and Larry Mattal, who lives in Arizona (collectively, "Defendants"). The purpose of the company was to hold certain investments in real property. In 1998, the partners all agreed to move their business venture from California and to register Olympic Partners as a limited

partnership in Oregon. The company's assets currently include two commercial ventures, one in Salem, Oregon, and the other in Olympia, Washington.

Between 2003 and 2005, Klein personally provided a series of loans to the partnership. One of these was a lump-sum loan of $1.6 million, which he gave to the partnership in December of 2003. In addition, between September of 2003 and June of 2005, the partnership incurred additional debts to Klein totaling approximately $300,000. Thus, in sum, the partnership assumed a debt to Klein of nearly $2 million.

In December of 2005, Klein died. Following his death, a struggle ensued about whether and in what capacity the real estate partnership should continue, and how the partnership would repay its obligation to Klein's estate. The remaining partners of Olympic Partners attempted to obtain financing to repay the loan, but were been unable to do so. They contend that they were frustrated in their efforts by Klein's son and estate administrator, Charles J. Klein, who through a variety of means has allegedly refused to permit the partnership to continue. (He insists that the original partnership dissolved on April 1, 2005, under the terms of the partnership agreement.) The various parties have not been able to reach agreement about how to structure a successor partnership.

In October of 2006, Defendants filed a lawsuit against Plaintiff in Oregon state court, seeking a judicial determination of their right to continue the original partnership and to purchase Klein's interest in it. Later that month, the case was removed to federal court in Oregon on the basis of diversity jurisdiction.

In November of 2006, Plaintiff filed this lawsuit. On behalf of his father's estate, he seeks: (1) repayment of the loan made by his father for the partnership's benefit, (2) an order dissolving the partnership, or in the alternative, a declaration that such dissolution has already been accomplished by virtue of the partnership agreement, and (3) the appointment of a receiver to account for and wind up the partnership's affairs. Now pending before the Court is a motion filed by Defendants, who request this Court to dismiss the case, transfer it, abstain from hearing it, or stay the proceedings.

## DISCUSSION

Defendants' first argument is jurisdictional. They contend that this Court lacks personal jurisdiction over them because they do not have the "minimum contacts" with California necessary to justify a reasonable expectation that they could be haled into court here. Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). They argue that this Court's exercise of jurisdiction over them would offend the "'traditional notions of fair play and substantial justice'" embodied by the Due Process Clause. Id. (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).

The Court rejects this argument. Specific jurisdiction exists when: (1) non-resident defendants purposefully avail themselves of the privilege of conducting business in the forum state, thereby invoking its benefits and protections, by doing some act or consummating some transaction within the forum; (2) the claim arises out of or results from the defendants' forum-related activities; and (3) the exercise of jurisdiction is reasonable. See Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995); Haisten v. Grass Valley Med. Reimbursement Fund, Ltd., 784 F.2d 1392, 1399 (9th Cir.1986); Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1287 (9th Cir. 1977); see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985); Hanson v. Denckla, 357 U.S. 235, 253 (1958).

As the Supreme Court stated in Burger King, a court may exercise jurisdiction even over a defendant who never sets foot inside the forum state:

> Jurisdiction in these circumstances may not be avoided merely because the defendant did not physically enter the forum State. Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are "purposefully directed" toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.

471 U.S. at 476. Thus, "even a single act can support jurisdiction" where "the defendant deliberately has engaged in significant activities within a State, or has created continuing obligations between himself and residents of the forum." Id. at 476 & n.18.

The Ninth Circuit has upheld the exercise of specific jurisdiction in numerous cases where non-resident defendants have had limited contacts with the forum state--for example, when there are business communications by mail, fax, telephone, or wire, and sometimes even when these contacts are initiated by other parties. See, e.g., Ballard, 65 F.3d at 1497-99 (finding specific jurisdiction over a foreign bank whose "physical contacts with the United States and California [were] quite limited," but who had nonetheless "created numerous ongoing obligations to U.S. residents . . . [had] regularly mail[ed] account statements to its U.S. customers, and . . . occasionally solicit[ed] new business from them"); Hirsch, 800 F.2d at 1478-79 (upholding an exercise of personal jurisdiction over an out-of-state insurer that was "not authorized nor licensed to do business in California" and had no direct contact with any entity there, but nonetheless had freely entered into a contract through which it eventually came to insure six employees of Southwest Airlines who lived in California); Haisten, 784 F.2d at 1395, 1397-99 (upholding the exercise of specific jurisdiction over an insurance company that was "carefully and deliberately established to appear to be doing business only in the Cayman Islands" but in effect became the insurer of California hospitals).

Here, Defendants repeatedly received loans from Klein, who at all times relevant to this litigation was a California resident and conducted his business affairs from his home within the Northern District of California. By accepting nearly $2 million in loans from Klein to finance their partnership, Defendants consummated transactions within the state of California sufficient to justify the exercise of personal jurisdiction over them within the state. Defendants do not dispute that they were partners in an ongoing business enterprise that received significant funding from a California resident. Moreover, Defendants do not dispute that Klein, who was not merely an outside financier but also the general partner of Olympic Partners, conducted some of the partnership's business from his California home. Surely, if it was the other way around, and the partnership was seeking repayment of a loan that it had made to Klein, the partners would not contest their authority to press their claims against his estate in California courts. In light of Defendants' ongoing financial relationship

1  with Klein, the Court finds that Defendants purposefully engaged in the sort of minimum
2  contacts within the State of California that would justify this Court's exercise of personal
3  jurisdiction over them. <u>Hirsch</u>, 800 F.2d at 1478-79. Furthermore, because this lawsuit
4  would not have been brought but for the Defendants' interaction with Klein in connection
5  with Olympic Partners, it is obvious that the claims at issue arise out of their contact with the
6  forum state. <u>Ballard</u>, 65 F.3d at 1500.

7        The only remaining question under this jurisdictional analysis, then, is whether it
8  would be "reasonable" for this Court to exercise specific jurisdiction over the Defendants.
9  This Court finds that it would be. Where, as here, a defendant "has purposefully directed its
10 activities to California, personal jurisdiction is presumptively reasonable." <u>Sher v. Johnson</u>,
11 911 F.2d 1357, 1364 (9th Cir. 1990). "The burden is on the [defendant] to 'present a
12 compelling case that the presence of some other considerations would render jurisdiction
13 unreasonable.'" <u>Id.</u> (quoting <u>Burger King</u>, 471 U.S. at 477). In determining the
14 reasonableness of the potential exercise of personal jurisdiction, a court must consider
15 numerous factors, including (1) the extent to which the defendant purposefully availed itself
16 of the privilege of doing business in the forum state, (2) the forum state's interest in
17 adjudicating the dispute, (3) whether an exercise of jurisdiction would conflict with the
18 sovereignty of the defendant's preferred forum; (4) whether the defendant will be burdened
19 by having to come defend itself in the forum state; (5) which forum could most efficiently
20 resolve the dispute; (6) where the plaintiff could obtain the most effective and convenient
21 relief; and (7) whether there exists an alternate forum. <u>Ballard</u>, 65 F.3d at 1500-02.

22       Defendants cannot meet their burden to show that this Court's exercise of jurisdiction
23 would be unreasonable. Although their contacts with California were minimal, their dealings
24 with Klein were not. Moreover, California clearly has an interest in providing relief to its
25 citizens (or their estates) when they are allegedly owed millions of dollars. There is no
26 danger here of offending the "sovereignty" of Oregon state, and at least when Klein's
27 complaint is viewed in isolation, there is no reason to think that a federal district court in
28 Oregon could resolve this dispute with any more efficiency than a federal district court in

1  California. Finally, it is not obviously more convenient to adjudicate this case in California
2  than in Oregon, where none of the individuals involved in the case live. In light of these
3  factors, the Court concludes that it would not be unreasonable, at least as a constitutional
4  matter, for this Court to assert personal jurisdiction over the defendants.
5       Nonetheless, the Court finds that California is not a suitable venue for this case. That
6  it would be permissible under the federal constitution to litigate a case in California, of
7  course, does not mean that it should be litigated there. This Court agrees with Defendants'
8  argument that Plaintiff must present his claims in conjunction with the previously filed
9  lawsuit now pending in Oregon. Defendants style this argument in several different ways--as
10  a request for transfer, see 28 U.S.C. § 1404(a); as a demand for dismissal under the
11  abstention doctrine, see Colo. River Water Conserv. Dist. v. United States, 424 U.S. 800, 817-18
12  (1976); as a challenge to venue, see Fed. R. Civ. P. 12(b)(3), 28 U.S.C. § 1406(a); or as a
13  motion to stay the proceedings, see Moses H. Cone Mem. Hosp. v. Mercury Contr. Co., 460
14  U.S. 1, 19 (1983). Under each rubric, however, the thrust of Defendants' argument is the
15  same: it would be inappropriate for this Court to proceed with the present lawsuit given that a
16  previously filed case raising substantially the same issues is currently pending in Oregon.
17       The Court agrees that proceeding with this case in California would be inappropriate.
18  The Court need not decide whether the abstention doctrine articulated in Colorado River or
19  Moses H. Cone Memorial Hospital, which generally requires federal deference to parallel
20  proceedings in state court, requires outright dismissal of the lawsuit on account of parallel
21  proceedings now pending in federal district court in Oregon. Instead, the Court concludes
22  that transfer is warranted under 28 U.S.C. § 1404(a). Under that provision, this Court has
23  discretion to transfer a case "to any other district or division where it might have been
24  brought." Id. In considering a motion to transfer, district courts conduct a "case-by-case
25  consideration of convenience and fairness," considering numerous factors, including: "(1) the
26  location where the relevant agreements were negotiated and executed, (2) the state that is
27  most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective
28  parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in

the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir. 2000).

Here, the Court concludes that these various factors weigh in favor of transfer. For example, because Olympic Partners is registered as an Oregon partnership, the question of that partnership's dissolution or non-dissolution is likely to be governed by Oregon law. An Oregon court's comparative familiarity with such law weighs in favor of hearing the case there. More importantly, Defendants presented substantially the same controversy to the Oregon courts first. This case was obviously brought in reaction to the filing of the lawsuit in Oregon. Where, as here, a reactive lawsuit presents substantially the same controversy as the previously filed case, the first-to-file rule demands that the case be litigated in Oregon, not California. See Pacesetter Sys., Inc. v. Medtronic, Inc., 678 F.2d 93, 94-96 (9th Cir. 1982). The Court acknowledges that several witnesses and many of the business records relevant to the lawsuit are situated in California. Nonetheless, the Court does not consider these inconveniences so serious as to trump the first-to-file rule, especially in light of the fact that Defendants considered Oregon a sufficiently convenient venue to file suit there. See Alltrade, Inc. v. Uniweld Prods., Inc., 946 F.2d 622, 625 (9th Cir.1991) (noting that district courts enjoy "an ample degree of discretion" in applying the first-to-file rule, and indicating that the application of the rule may require the transfer or stay of a case, rather than outright dismissal (quoting Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180, 183 (1952)).

## CONCLUSION

Although the Court holds that specific jurisdiction exists over Defendants because of the minimum contacts they had with California in securing $2 million in financing from Alan Klein, the Court nonetheless agrees that transfer this case is appropriate. Because a previously filed case involving substantially the same controversy is currently pending in federal court in Oregon, and because the issues in the case are likely to require application of

1 | Oregon law, the Court finds that transfer is warranted under the first-to-file rule and the
2 | Court hereby exercises its discretion to transfer the case to the District of Oregon pursuant to
3 | 28 U.S.C. § 1404(a). Upon transfer, this case may be related to or consolidated with the
4 | previously filed case upon motion of the parties or by *sua sponte* action by the Oregon
5 | district court.
6 | **IT IS SO ORDERED.**

Dated: January 12, 2007

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

CHARLES J KLEIN,

    Plaintiff,

v.

HOWARD GARDNER et al,

    Defendant.

Case Number: CV06-06918 CRB

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on January 12, 2007, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Paul B. George  
Foster Pepper Tooze LLP  
601 SW 2nd Ave 18FL  
Portland, OR 97204-0607

Dated: January 12, 2007

                      Richard W. Wieking, Clerk  
                      By: Barbara Espinoza, Deputy Clerk